## BUFORD *v.* LEWIS.

### Opinion delivered October 5, 1908.

1. PARTNERSHIP—PRESUMPTION FROM PARTICIPATION IN PROFITS.—While participation in the profits of a business is not conclusive evidence of a partnership, in actions by creditors, it is a cogent test for trying the question, and is conclusive unless there are some circumstances altering the nature of the contract. (Page 416.)

2. SAME—WHEN RELATION EXISTS.—Where A advanced money to B to buy an interest in a sawmill, to be repaid out of the profits of the mill, which were to be divided between them, the relation of partnership was created between them. (Page 418.)

Appeal from Little River Chancery Court; *James D. Shaver,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

Buford owned a sawmill, with some timber and lumber on its yards, situated at Mills Ferry, Little River County, and in October, 1906, sold it to W. D. Strong for $2,000, $500 cash

and the balance represented by 15 notes of $100 each. He executed to Strong a bill of sale, and reserved a lien on the property to secure the payment of the purchase money. This lien was not recorded.

W. A. Carroll was an experienced sawmill man, and was told by J. A. Lewis, who had some money for investment, that he would advance money for a sawmill enterprise if he found a suitable one. Strong offered to sell Carroll a half-interest in this mill, and, after investigation, Carroll considered it an advantageous proposition. Carroll says that he had no knowledge of Buford's claim upon the mill; that it was represented to him that it was clear, and that he so represented to Lewis. On the other hand, Strong and his wife testified that Lewis was shown the bill of sale, and said that it was not sufficient to constitute a claim against the property.

On the 25th of January, 1907, Strong, Carroll and Lewis met in the office of an attorney at Mena (the home of Lewis), and there this transaction took place: Lewis paid Strong $1,000 for an undivided half-interest in the sawmill, which included the machinery, lumber on hand, timber contracts and commissary. Strong made a bill of sale of a half interest to Carroll, and Carroll assigned the same to Lewis; and Strong also executed a mortgage upon the whole interest of Lewis. This mortgage recited an indebtedness of $1,000, payable one year after date, "the extension of the time or date of payment being a matter of mutual consent between the parties hereto, and for all other moneys, advances, goods, wares, merchandise, supplies, services, etc., furnished by the party of the second part to the party of the first part." The mortgage contained the usual power of sale, duly acknowledged, and was filed for record on the 13th of March, 1907.

Strong and Carroll operated the mill until March 19, 1907, when Carroll bought out Strong's interest. This was brought about in this way: Sometime prior thereto, Buford came to the mill to collect his debt of Strong, amounting to over $1700, and Carroll then learned, as he says for the first time, that Buford was asserting a lien against the property. Strong, Carroll and Buford met at Texarkana and settled the matter by Buford re-

mitting his debt down to $1200, and accepting $200 cash and taking Carroll's note for the remaining thousand dollars, secured by a mortgage upon the property; and Strong, in consideration of being relieved of this debt, conveyed his interest to Carroll.

The sawmill was subsequently destroyed by fire. Buford sued Carroll, seeking to foreclose the mortgage and put the property in the hands of a receiver (this was before the mill burned), and subsequently joined Lewis, seeking to hold him as a partner of Carroll, and jointly liable upon the note. There was a decree for the defendants, and Buford has appealed. The controlling question is whether a partnership existed between Carroll and Lewis.

Lewis thus states the contract between him and Carroll: "The agreement as I understand it—I was to furnish Mr. Carroll a certain amount of money to go into, operate, a mill, and for the use of that money I was to receive half of the profits. This is about the sum and substance of that. Mr. Carroll was to manage the mill business in his own name, and I was not to be known in it, so far as being responsible for anything was concerned. I was simply to furnish him a certain amount of money to operate the mill." He further testified: At that time the mill was to be operated in the name of Carroll and Strong. His profits were to be one-half of Carroll's profits, which were one-half of the business. He took no note from Carroll for the money advanced. When Carroll bought out Strong, he had no other agreement with him, and did not know of it until after it was done. He was not to furnish any more money than the thousand dollars furnished at the time of the purchase of Strong's half-interest, but he subsequently did advance $260 or $265 for operating expenses. Carroll was to operate the mill for their mutual benefit, according to their agreement, and he, Lewis, felt like he owned half the profits. He was not a partner in the business, because he was not responsible for debts that Carroll and Strong might make; and this was because he did not want to become responsible for their accounts and acts, but wanted his profits as interest on his investment. Carroll was to manage the business. Lewis went to the mill twice to see how the business was getting along.

Before he had made the investment, he sent Carroll to investigate the situation and see if there were any liens on the property. Strong represented to him and Carroll that there were no liens upon the property at the time he advanced the thousand dollars. During the operation of the mill, Carroll sold a planer belonging to the property and made important contracts in the management and conduct of the business, and it was understood that he would have authority to do so when he undertook to run the business.

Carroll's testimony on this subject is in substance as follows: That Lewis told him if he found some mill property that he would put a thousand dollars into it. After investigating this proposition, he concluded it was a good one. As he was borrowing the money, he insisted that Strong should give a mortgage upon the whole property to Lewis to secure it, and he assigned a half-interest in the bill of sale which he had received from Strong and Lewis for the same purpose. He was asked if Lewis bought an interest in the mill at the time the purchase was made at Mena, and said: "He practically bought an interest in it." The following excerpts are taken from his testimony:

"Q. Were you and Mr. Lewis partners in this transaction?

"A. So far as profits were concerned only.

"Q. You had no joint interest in the property?

"A. One way we did, and one way we did not. He had his security on the property.

"Q. I will ask you what business, if any, or what was your duties under your agreement with Mr. Lewis?

"A. I had full charge of the property to run it.

"Q. Were you to operate it?

"A. Yes, sir, and make some money out of it.

"Q. What part of the profits was he to receive?

"A. One half of my profits.

"Q. During the connection of Strong there you would have gotten one-half?

"A. Yes, sir.

"Q. Was he to get one-fourth?

"A. Yes, sir.

"Q. After Strong went out what part was he to receive?

"A. One-half."

The chancellor found that there was no partnership, and Buford appealed. There were other matters in the suit; some were not brought here, and others are not necessary to consider.

*Richard M. Mann,* for appellant; *William H. Arnold,* of counsel.

1. The facts in the case, as shown by the evidence, are sufficient to establish a partnership existing between Lewis and Carroll at the time the note was executed. Sharing in profits is a test of partnership which is conclusive unless there are circumstances altering the nature of the contract. 22 Am. & Eng. Enc. of L. 2 Ed. 38; 59 N. E. 569; 37 Ark. 309; 74 Ark. 437; 63 Ark. 518; 145 U. S. 611; 86 Mich. 570; 161 Mo. 645; 60 Tex. 372; 64 S. W. 1007; 48 S. W. 548; 63 U. S. 330; 91 U. S. 134; 85 S. W. 918; 53 Wis. 260; 58 N. Y. 272; 22 Am. & Eng. Enc. of L. 26; 5 Ch. Div. 458; Parsons, Partnership, 4 Ed. 47; Lindley on Partnership, *11; 139 Pa. 319; 115 N. Y. 625.

2. If Lewis was a partner, even though dormant, and whether he signed the note or not, he is liable. It being agreed that Carroll should manage the mill business in his own name, that became the firm name, and Carroll was authorized to make contracts for the firm. 5 Peters, 529, 8 Law Ed., 216; 5 C. P. D. 109; 1 Denio (N. Y.) 402; 48 N. Y. 545; 22 N. E. 745; 15 Am. Dec. 369; 56 *id.* 142; 62 S. W. 977; 50 Ark. 62; 76 Ark. 4; 50 Ark. 433; 1 Am. & Eng. Enc. of L. 2 Ed. 1139.

HILL, C. J. (after stating the facts). Concede, for the moment, that the relation between Carroll and Lewis was a partnership: Then, when Carroll, in order to relieve an asserted claim against the property, and to buy the other half-interest in the property, thereby increasing the respective holdings of himself and Lewis from one-fourth to one-half each, executed a note to Buford in accomplishment of this two-fold purpose, it would be binding on Lewis, if in fact they were partners. If it be conceded that it was not within the apparent scope of Carroll's authority to do this, yet Lewis acquiesced in it and was to receive the benefit of it. The sole inquiry is whether the facts constituted Carroll and Lewis partners.

To determine whether a given agreement amounts to a partnership between the parties themselves is always a question of

intention. But a different test prevails where the rights of third parties are concerned. It was formerly held that participation in profits was conclusive evidence of partnership in actions by creditois. That rule has been modified so that a participation in profits is not conclusive, but "it is a cogent test for trying the question," and "is conclusive unless there are some circumstances altering the nature of the contract." *Culley* v. *Edwards,* 44 Ark. 423; *Johnson* v. *Rothschilds,* 63 Ark. 518; *Rector* v. *Robins,* 74 Ark. 437; *Herman Kahn Co.* v. *Bowden,* 80 Ark. 23.

In *Johnson* v. *Rothschilds, supra,* this statement from the Supreme Court of Florida (*Dubos* v. *Jones,* 16 So. 392) was approved: "To constitute a loan in such a case, the money advanced must be returnable in any event. It is not a loan if repayment is contingent upon the profits, for in such case it is made, not upon the personal responsibility of the borrower, but upon the security of the business. Neither must the transaction be a mere device to obtain the benefits of a partnership without incurring its responsibilities, for in such case, whatever else the parties may call it, it will be construed to be a partnership."

In this case the advance of $1,000 to Carroll was not a loan, because the money was not returnable in any event; its repayment was contingent upon the profits. The loan was not made upon the personal responsibility of the person to whom it was advanced, but upon the security of the business. No note was taken from Carroll to Lewis, but a device was contrived by which Strong gave a mortgage upon the entire property, at the same time conveying a half-interest in the property to Carroll, which was in turn assigned to Lewis. This mortgage was evidently to secure to Lewis a preference over possible creditors of the new concern, for it was not pretended anywhere that Strong owed him $1,000, for which the mortgage was executed. The only thousand dollar transaction between them was the purchase of a one-half interest in the business for Carroll, or Carroll and Lewis, as the case may be.

In *Rector* v. *Robins* this court cited with approval *Meehan* v. *Valentine,* 145 U. S. 611, and this excerpt from that decision is applicable here: "In the present state of the law upon this subject, it may perhaps be doubted whether any more precise gen-

eral rule can be laid down than, as indicated at the beginning of this opinion, that those persons are partners who contribute either property or money to carry on a joint business for their common benefit, and who own and share the profits thereof in certain proportions. If they do this, the incidents or consequences follow, that the acts of one in conducting the partnership business are the acts of all; that each is agent for the firm and for the other partners; that each receives part of the profits as profits, and takes part of the fund to which the creditors of the partnership have a right to look for the payment of their debts; that all are liable as partners upon contracts made by any of them with third persons within the scope of the partnership business; and that even an express stipulation between them that one shall not be so liable, though good between themselves, is ineffectual as against third persons. And participating in profits is presumptive, but not conclusive, evidence of partnership."

Lewis advanced the money upon the business, and his recompense was to be a fourth interest in the profits, until Strong went out on the execution of the note sued on to Buford; and in consideration of it, then his interest was to be one-half of the profits. He entrusted Carroll with the entire management and control of the business. Therefore it is seen that, in addition to the strong presumption arising from the participation in the profits, the facts also bring the case within the rule laid down in *Culley* v. *Edwards,* that where the relation of principal and agent existed between persons taking the profits and those carrying on the business, such relation determined the partnership. The evidence of these parties themselves shows that all the elements necessary to constitute a partnership existed between them so far as third parties were concerned; and the court erred in not so holding.

The judgment is therefore reversed and the cause remanded with directions to enter judgment in conformity with this opinion