## ROACH v. RECTOR.

Opinion delivered November 22, 1909.

1. PARTNERSHIP—TEST.—As between the parties to an alleged partnership, the true test of a partnership is whether the parties actually joined together to carry on a trade or adventure for their common benefit, each contributing property or services and having a community of ownership in the property and of interest in the profits of the business. (Page 525.)

2. TROVER—LIABILITY OF JOINT TORT FEASORS.—In case of a wrongful conversion of property by several persons, the law permits an action and a recovery against all the wrongdoers or against any number less than the whole. (Page 528.)

3. AGENCY—WHEN PRINCIPAL BOUND.—A principal is bound by the acts of his agent within the authority that has been actually given, and this includes, not only the precise act which is expressly authorized, but also whatever usually belongs to the doing of it or is necessary to its performance. (Page 528.)

4. TROVER—DEFENSE.—A creditor who has seized his debtor's goods without authority of law and sold them cannot mitigate or defeat a

recovery by showing that the property taken has, without the debtor's assent, been applied to the debt.   (Page 529.)

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

*Wright Prickett* and *Read & McDonough,* for appellants.

The cause should have been transferred to equity.   The facts disclose a partnership between the plaintiff and N. M. or E. T. Roach.   87 Ark. 142; 134 Pa. 482; 104 Cal. 302; 35 Ga. 234; 74 Ark. 437; 63 Ark. 518; 44 Ark. 423; 80 Ark. 23; 145 U. S. 611.

*Hal L. Norwood, J. I. Alley, J. S. Lake* and *Wm. H. Rector,* for appellee.

1.   As to whether or not a partnership exists, it is the intention of the parties which controls and is conclusive as between them.   2 Ark. 346; 22 Ark. 381; 39 Ark. 280; 44 Ark. 423; 54 Ark. 384; 56 Ark. 281; 42 Ark. 390; 4 Ark. 421; 74 Ark. 437; 87 Ark. 412; 145 U. S. 611; 71 Ill. 148; 28 O. St. 319; 30 Cyc. 260-388.

2.   All the instructions are to be considered together in determining whether either of them is erroneous.   74 Ark. 377; *Id.* 431; 77 Ark. 458.

3.   Exceptions not brought into the bill of exceptions will not be considered here.   74 Ark. 364; 8 Ark. 428; 25 Ark. 503; 37 Ark 399; 33 Ark. 807.

4.   That the verdict was in favor of E. T. Roach is no ground for reversing the judgment against N. M. Roach.   They were severally liable, and she will not be heard to complain because he escaped.   34 Ark. 63; 57 Ark. 547.

FRAUENTHAL, J.   The appellee, George L. Rector, who was the plaintiff below, instituted this suit in the Polk Circuit Court against the defendants, N. M. Roach, E. T. Roach, Fred Teeter and B. E. Milam, for damages on account of the wrongful taking and conversion of a stock of merchandise.   In his complaint he alleged that in 1905 and prior to that time his wife, W. K. Rector, was engaged in the mercantile business at Gillham, Ark., and that she was indebted to the defendant N. M. Roach; that N. M. Roach was the wife of defendant E. T. Roach, who was her agent in the management and conduct of her business.   In January, 1906, W. K. Rector was adjudged a bankrupt, and her stock of merchandise was ordered sold in the

bankruptcy proceedings. Prior to the day of the sale of said goods E. T. Roach, acting as the agent of his wife, conferred with the plaintiff relative to her said indebtedness against W. K. Rector and the assets of that business; and they considered that, after the sale of the goods and the distribution of the proceeds amongst the creditors, there would still remain due to N. M. Roach $800. They then agreed that at the sale of the goods under the bankruptcy proceedings E. T. Roach would bid in the stock of goods for the plaintiff, who would then own and conduct the business and repay the amount bid for the goods and also pay N. M. Roach the said balance of her indebtedness against W. K. Rector.

In pursuance of said agreement E. T. Roach did at said sale bid in said stock of goods, and did purchase same for the plaintiff at and for the price of $3,300; and plaintiff did for said purchase price execute to N. M. Roach his note for $3,000, payable 90 days after date, and did afterwards pay to her the sum of $300, the balance of the purchase money for the goods. He alleged that he thereupon took possession of the stock of goods, and conducted the business at Gillham for a time, and later moved the stock of goods to Mena, Ark., where he carried on the business until April, 1907, when E. T. Roach, acting for and as the agent of his wife, N. M. Roach, wrongfully took possession of the goods and dispossessed him of the storehouse, and then sold the goods to the defendant Fred Teeter, who is a brother of the said N. M. Roach; that Teeter held possession of the goods and business until August, 1907, when he sold same to the defendant B. E. Milam. He alleged that the goods in April, 1907, were of the value of $5,754.27. He asked for judgment for the value of the goods and also for damages incurred by reason of being deprived of the business.

The defendants, in their answer, denied that the plaintiff was the owner of said goods, or that same were purchased by or for him; and denied in detail each allegation of the complaint. They alleged that at the sale of the goods of W. K. Rector under the bankruptcy proceedings the said E. T. Roach purchased the same for himself and solely as his own property, and employed the plaintiff at a salary of $40 per month to conduct the business under the name of the "Cash Buyers' Union;" and that "E. T. Roach was at all times the absolute owner of the stock of goods,

and was in possession of the same, and the plaintiff was conducting the said business for E. T. Roach." They alleged further that it was agreed that the stock of goods should be sold as soon as possible, and the proceeds applied to the payment of the amount bid and paid for same at said sale in bankruptcy proceedings and to the payment of any goods that should be bought to replenish the stock; and that, after these sums were all paid and the further sum of $800 to N. M. Roach, the said E. T. Roach would turn the stock remaining over to plaintiff.

In their answer the defendants asked that the cause be transferred to the chancery court, which motion to transfer the court overruled.

The cause was tried before a jury, and there was a sharp conflict in the evidence introduced by the respective parties. The testimony on the part of the plaintiff tended to prove the allegations as set out above in his complaint; while that on the part of the defendants tended to establish the allegations in the answer; upon the one hand tending to establish that the stock of goods at said sale in the bankruptcy proceedings was purchased for the plaintiff and was his sole property, and upon the other hand tending to prove that said stock was bought by E. T. Roach as his sole property.

The evidence tended further to prove that when the plaintiff and E. T. Roach were conferring, just prior to the day of the sale of said stock of goods under the bankruptcy proceedings, relative to the purchase thereof, it was thought by them that the same would bring $3,000 at the sale. In order to obtain that money, the plaintiff executed to N. M. Roach his note for $3,000, payable 90 days after date, and this note was indorsed by N. M. Roach and negotiated to the National Bank of Mena, of Mena, Ark., and a certified check was given therefor by said bank payable to N. M. Roach. And on the day of the sale, when the stock brought $3,300, this certified check was paid over to the receiver making the sale, and the balance of $300 was paid by check of N. M. Roach. The testimony on the part of the plaintiff tended further to prove that he renewed the above note from time to time, paying the interest thereon, until April, 1907, and that the note was finally taken up or paid to the bank by N. M. Roach, but was not actually marked paid by said bank, but was turned back to N. M. Roach; that plaintiff at once took possession

of the stock of goods after the sale in the said bankruptcy proceedings and conducted the business at Gillham for several months, and paid to defendant Roach $300 on the balance of the purchase price of said stock of goods; that later he moved the stock to Mena, where he conducted the business until April, 1907; and that from time to time he put into the business moneys and goods of his own amounting to $1,800; that during the time E. T. Roach advised with him concerning the management of the business, and at his suggestion employed defendant Teeter as a clerk in the store; and that shortly thereafter they dispossessed the plaintiff of the store house and stock of goods by changing the locks and taking possession of and disposing of the stock over his protest and against his rights.

There was considerable testimony introduced by the parties to sustain their respective contentions, but the above presents the substantial portions of the evidence relative to the issues which are involved in the determination of this case.

A verdict was returned by the jury in favor of the plaintiff for $5,754.27, the value of the stock of goods in April, 1907, the time of the alleged conversion, and against the defendants N. M. Roach and Fred Teeter. From the judgment entered thereon these two defendants prosecute this appeal.

The first question involved in this case to be determined is whether or not the plaintiff and the defendant N. M. Roach were partners in the stock of goods and business after the purchase at the sale under the bankruptcy proceedings. Upon the contention that the allegations in the pleadings and the testimony showed that such relationship did exist between these parties, the defendants requested at the trial and now urge that this cause should have been transferred to the chancery court.

It has been found difficult to state any precise rule or any precise test for the determination of the question of when the relation of partnership is created or exists. The difficulty arises in those cases where the agreement does not profess to create a partnership, and yet it is contended that the effect of the agreement is to create one. Each case is so dependent upon its own varying circumstances, and distinctions are made between a partnership between the parties themselves and a partnership as to third persons, that the determination of the question must necessarily depend upon the special facts of each case. There are

certain well-, established principles, however, which fix the requisites of a partnership. The rule recognized and followed for a long time was that participating in and receiving a certain share of the profits of the business was a conclusive test of a partnership. But this rule has been abandoned in England and generally in America. In this State the test of a partnership between the parties is thus formulated by Chief Justice COCKRILL in the case of *Culley* v. *Edwards*, 44 Ark. 423:

"But while the old rule prevailed that participation in the profits was conclusive as to third persons, and before the introduction of the modern principle that it is a mere circumstance to show the relation of principal and agent between the persons taking the profits and those carrying on the business, the test of partnership between the parties themselves has always been their actual intent." This is the true test of a partnership between the parties themselves, as recognized in this State. *Johnson* v. *Rothschilds*, 63 Ark. 518; *Rector* v. *Robins*, 74 Ark. 437; *Paris Mercantile Co.* v. *Hunter*, 74 Ark. 615.

This intention to form a partnership may be expressed in the contract, or it may be gathered from the acts of the parties and from the circumstances which may interpret the agreement between them. But there are certain requisites necessary before the law will in any event regard the relationship between the parties as that of partners. In the case of *Meehan* v. *Valentine*, 145 U. S. 611, it is said: "The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services and having a community of interest in the profits." There must be a community of interest in the property employed in the business and in the profits as profits themselves. They must be co-principals in the business; and if the business is owned by one of the parties, and the other receives the profits or a portion of the profits in payment for his debt or for services or otherwise, the relationship of partners between them has not been created and does not exist. Parsons on Partnership, § 58; 30 Cyc. 370.

A creditor of a business might under agreement receive a portion of the profits of the business in payment of his debt or by way of interest, and still he would not be a partner of such business. Instead of having an interest in common with the

business, his interest would more often be in opposition to it. 30 Cyc. 372.

As between the parties themselves, before it can be said that the relationship of partners has been created, it is therefore essential that the parties themselves intended by the effect of their contract to form such partnership business, and that they should have common ownership and community of interest in the properties of the business, and that they should share in some fixed proportion in the profits thereof only as profits of the business. *Culley* v. *Edwards, supra; Johnson* v. *Rothschilds, supra;* 30 Cyc. 366.

Measured by these principles, we do not think that the relation of partners was created or existed between the parties in this case under the allegations of the complaint or answer or under the testimony of either party.

The plaintiff contended that he had purchased the property and business solely as his own, and was indebted to the defendant, N. M. Roach, for the purchase money thereof. If, under the agreement, that debt was to be paid out of the business, it would not even be a sharing in any certain portion of the profits nor would it be receiving the profits as profits of the business. Every creditor of the business might or would be paid in the same manner. And if she was held out to third persons as being so connected with the business that she became liable to them, it would not be because she was actually and in fact a partner, but rather because by her acts and conduct she was estopped as to such third persons to deny that she was a partner.

The defendant E. T. Roach contended that he actually bought the property as his own, and was the sole and absolute owner thereof. His contention was that plaintiff had no title to or ownership in the stock of goods; but that, on the contrary, he was to have no interest in it until defendant should turn the remaining goods over to him after certain debts were paid.

Each of the parties was claiming to be the sole owner of the goods, and under the testimony of neither of them were they joint owners of it with a community of interest in the property or profits.

The true issue, therefore, involved in the case was whether the plaintiff bought and owned the stock of goods, or whether E. T. Roach bought for himself and owned the stock. That issue

was presented to the jury under instructions in which we find no reversible error. Upon that issue the jury found in favor of the plaintiff; and we are of the opinion that there is substantial evidence to sustain that verdict.

It being thus decided that the stock of goods was the property of and owned by the plaintiff, all the defendants who took possession of the goods and exercised acts of ownership over them and thus converted them to their use became liable to the plaintiff. There was evidence sufficient to show that all the defendants did this. They were in that event all liable therefor jointly and severally to the plaintiff. This is an elementary principle of the law of torts. The law permits an action and a recovery for a wrongful conversion against all the wrongdoers, or against them severally, or any number less than the whole. *Ray* v. *Light,* 34 Ark. 421; 1 Cooley on Torts, 224, 227; 13 Enc. of Evidence, 73; 28 Am. & Eng. Enc. Law (2 ed.) 685. It follows that appellants cannot legally complain because the verdict was not against all the defendants.

The testimony on the part of the plaintiff tended to prove that the defendant E. T. Roach was the agent of his wife, N. M. Roach, in the conduct of her business and in all the transactions and acts done by him in this case. A principal is bound by the acts of the agent within the authority that actually has been given, and this includes not only the precise act which is expressly authorized, but also whatever usually belongs to the doing of it or is necessary to its performance. The power of the agent is to do all that is necessary to effect the purpose which is the subject of his employment. 1 Am. & Eng. Ency. Law, 991; 31 Cyc. 1326-1344; *Knowles* v. *Street,* 87 Ala. 357.

It then becomes a question for a jury to decide under the evidence whether the agency existed and whether the act done was within the scope of such agency. In this case there was testimony showing such agency. In fact the entire management and control of the business and affairs of N. M. Roach were intrusted to her husband in the prosecution and the settlement of the matters involved in this case.

Under the testimony the jury were warranted in finding that he was the agent of his wife in every act done by him in endeavoring to collect the debt due to her, in indorsing her name on the note, in accepting in her name the draft of the bank and indors-

ing her name on it, and in making the agreements relative to the stock of goods, and finally in taking and selling them in order to collect her debt. The issue as to this agency and the scope thereof was submitted to the jury under instructions in which we find no prejudicial error.

The defendants made a general objection to the instruction on the measure of damages given at the request of plaintiff. They did not specifically point out any inaccuracy of language in that instruction of which they now complain. On the contrary, they asked that the instruction be modified to the effect that from the value of the goods should be deducted the amount of the note. The objection, therefore, now made, which is in effect only to the alleged inaccuracy of certain language therein, is not well taken.

It is urged by the defendants that the amount of the recovery should have been diminished by the amount of the note which was for the purchase money of the stock of goods, and also by the amount of the indebtedness which was incurred in the operation of the business by the plaintiff. But as to said note and as to the indebtedness that one of the defendants may have paid or shall pay for the plaintiff she is only his creditor. For the collection of that note and that indebtedness she had and still has the right to institute suit against the plaintiff and thus obtain recovery. She has not done this; nor in this case has she sought to have the same allowed as a counterclaim. In order to obtain the satisfaction of that note and the debt, she has, under the testimony of the plaintiff, forcibly taken charge of and possession of the property of the plaintiff without legal process; and after selling same has applied the proceeds to her debt against the plaintiff. This she did not have the right to do. As is well said in the case of *Northup* v. *McGill,* 27 Mich. 240: "No creditor without process and without authority or right, except such as belongs to him as creditor, can dispossess his debtor of his goods and then mitigate or defeat a recovery by showing that the property taken has, without any assent or concession of the debtor, been applied to the debt. Such intervention must have the sanction of the debtor or the law. The opposite view would lead to gross oppression and abuses. The creditor would be enabled to take the law into his own hands and unite in himself the power to judge and execute in his own favor and according to his own pleasure."

In this case a number of instructions were given, and some refused over objections duly saved. We do not think it necessary to note them severally. The above principles of law, which we think are applicable to the facts of this case, will show that no reversible error was committed by the court in his rulings thereon. The cause was tried upon sharply conflicting evidence by a jury. As to the weight of that evidence, they were the sole judges; and, whatever may be the opinion of this court as to the weight thereof, it cannot, under the repeated rulings of this court, affect that verdict, as there was substantial evidence to sustain it.

The judgment is affirmed.