DRILLING *v.* ARMSTRONG.

Opinion delivered April 18, 1910.

PARTNERSHIP—CONTRACT HELD NOT TO CREATE.—A contract whereby the owners of a hotel building leased it for a certain percentage of the gross profits, without any agreement that the hotel should be run as a joint business, does not create a partnership.

Appeal from Conway Circuit Court; *Hugh Basham,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant on September 18, 1909, filed against appellees the following complaint (omitting formal parts) :

"The plaintiffs state that they are and at all times herein mentioned were partners, doing a retail grocery business in the city of Morrilton.

"That prior to the 1st day of August, 1907, defendants and one Mrs. E. Bogard entered into the following contract with each other, towit:

" 'In Duplicate.

### " 'Lease.

" 'This agreement is made and entered into this 3d day of August, 1906, by and between Carroll Armstrong and Robert L. Armstrong, hereinafter called the lessors, and Mrs. E. Bogard, hereinafter called the lessee. The lessors hereby let and lease unto the lessee what is known as the "Speer Hotel Property," situated near the railway depot in Morrilton, Conway County, Arkansas, together with the garden belonging to the hotel situated in the same block, and also the furniture, beds, bedding, bed clothing, chairs, tables, tableware, kitchen furniture, dining room, cutlery, crockery ware, and all other property in and about the place used in the operation of said hotel property. To have and to hold the said property until the first day of August, 1907, unless this agreement is terminated sooner by either of the parties hereto giving the other party at least 30 days' notice in writing; the lessee to yield and pay the lessors thirty per cent. of the total or gross receipts taken in for all purposes in the operation of said hotel, to be paid from time to time as the lessors may request during the month, and not later than the first of each month, during the continuance of this lease, the lessee to keep a full and accurate account of all receipts taken in in the operation of said hotel, which account is to be subject to the inspection of the lessors at all reasonable hours. The account to show the daily receipts. Each of the parties hereto retain duplicate inventories of the personal property delivered to the lessee, which is to be taken care of by the lessee and returned to the lessors in like condition, wear and

tear excepted. It is agreed that the lessee is to take all supplies and groceries now on hand and account to the lessors for the same at their cost, including wood. The lessee covenants with lessors: (1) To pay lessors 30 per cent. of the gross receipts taken in and received in the operation of said hotel, and to keep an accurate and complete account of the gross receipts to be entered up daily, and to pay lessors their 30 per cent. as above stipulated, the daily account of the receipts to be subject to the inspection of the lessors at all reasonable hours. (2) To take proper care of the property, real and personal, and not suffer any waste or injury, except the usual wear and tear. (3) To permit the lessors and their agents to enter at all reasonable times to view and inspect the condition of the premises and personal property. (4) Not to make any alterations or additions to said property during said term without the consent of the lessors being first obtained in writing.

　" 'It is mutually agreed and understood between the parties hereto that the lessee is to become the owner of seventy per cent. of the gross or total receipts taken in by her during the continuance of this agreement, out of which seventy per cent. the lessee is to pay all operating expenses of said hotel, and that the balance of said gross receipts is to become the property of the lessors, and the lessors, it is mutually agreed, are not to be liable for any of the expenses of operating said hotel. In addition to the above, it is agreed by the lessee that the lessors shall during the continuance of this contract have their board at said hotel without any charge whatever, but as part of the consideration of this lease. And it is mutually understood and agreed that the lessors reserve the right to select a room or rooms, not, however, to choose any regular boarder's room, to be occupied by them in the said hotel.

　" 'The lessee agrees not to assign this lease without the written consent of the lessors. It is mutually agreed that during the continuance of this contract said hotel is to be operated in the name of the lessee. It is mutually agreed between the parties hereto that the lessee take possession of said property on the 4th of August, when her term begins. It is mutually agreed that the lessors may enter the property at reasonable hours for the purpose of causing such repairs made as they may wish.

" 'In testimony of the foregoing, we, the undersigned, have hereunto set our hands this the day and year aforesaid.

" 'Carroll Armstrong,

" 'R. L. Armstrong,

" 'Mrs. E. Bogard.'

"That upon the expiration of said contract on the 1st day of August, 1907, defendants and said Mrs. Bogard extended same for one year by the following written agreement:

" 'August 1, 1907.

" 'It is mutually agreed that the contract which expires on this date for the operation of the Speer Hotel, between Carroll and R. L. Armstrong and Mrs. E. Bogard, shall be and the same is hereby extended for one year more, or until the 1st day of August, 1908, which said contract is hereby referred to and made a part of this agreement.

" 'Carroll Armstrong,

" 'R. L. Armstrong,

" 'Mrs. E. Bogard.'

"That, on the expiration of the said renewal, said agreement was continued indefinitely by verbal agreement between the parties thereto, and the transaction hereinafter mentioned occurred during the existence of said contract. That said contract and agreement was one of partnership, and made each of the parties thereto liable as partners for the debts and liabilities of the said business. That, during the contract aforesaid, plaintiffs sold to said hotel business, and there were used in the operation thereof groceries and supplies in large amounts, and there now remains due and unpaid on said account so furnished the sum of $262.15, an itemized statement of which is hereto attached as part hereof.

"Wherefore plaintiff prays judgment against defendants for said sum and for their costs."

Appellees demurred generally to the complaint. The demurrer was sustained, and, appellants electing to stand on their complaint, same was dismissed. Judgment was entered for appellees, and this appeal is duly prosecuted.

*Sellers & Sellers,* for appellants.

A partnership existed between the parties. 87 Ark. 412; 44 Ark. 423; 63 Ark. 518; 74 Ark. 437; 80 Ark. 23; 145 U. S..

611. If the supposed partner acquired by his bargain a property in, or control over, the profits while they were still undivided, he is liable to third persons as a partner. 3 W. Va. 507; 100 Am. Dec. 766; 61 N. Y. S. 351; 167 N. Y. 605; 127 Fed. 228; 45 Ind. 439; 37 Ga. 115; 58 Conn. 375; 81 N. Y. 550; 115 N. Y. 625; 58 W. Va. 629; 98 N. Y. S. 321; 108 S. W. 922; 45 N. Y. 797; 58 N. Y. 272; 48 N. Y. 545; 12 Conn. 69; 18 Wend. 185; 6 Met. 82. A sharer in gross receipts is liable to creditors. 6 Conn. 347; 5 Wend. 275; 12 Rich. Law 176; 2 Watts 232; 18 L. R. A. (N. S.) 975; 44 N. H. 452.

*Moose & Reid*, for appellees.

Participation in profits is not the test of partnership, but is evidence of it. 2 Ark. 346; 44 Ark. 424; 63 Ark. 518. No one fact or circumstance can be taken as an absolute and conclusive test. 18 L. R. A. (N. S.) 970; *Id.* 1070. When the profit sharing contract expressly shows that it is not the intention of the parties to form a partnership, but to make a lease, no liability to third persons is incurred. 4 Ky. L. R. 619; 43 Ill. 437. The fact that a lessor receives as rent for the use of his property a portion of the profits arising from its use does not make him a partner in business conducted on the property. 85 N. W. 537; 42 Am. R. 99; 28 N. Y. S. 134. To constitute a partnership there must be a community of property, of interest, and of profits. 144 Mich. 274.

WOOD, J., (after stating the facts). The complaint alleges a partnership growing out of the terms of the contract between the Armstrongs and Mrs. Bogard. But, as we view the contract, it is nothing more nor less than a lease contract between the Armstrongs and Mrs. Bogard, whereby the former, as the lessors of the property therein described, lease the same to the latter as the lessee for a definite term upon consideration that the lessee give to the lessors their board and thirty per cent. of the gross receipts of the business, which belonged exclusively to the lessee, and was to be operated and conducted by her solely for her own benefit. The contract, considered as a whole, does not create the relation of partnership, when measured by any of the rules by which such relation is determined, as announced by the decisions of this court.

In the case of *Herman Kahn Co.* v. *Bowden*, 80 Ark. 26,

this court said: "A partnership may be defined to be as the relation existing between two or more persons who have agreed to carry on a business together and to share in the profits thereof as joint owners of the business."

In *Culley* v. *Edwards*, 44 Ark. 427, we said: "So far as liability to creditors is concerned, the test of the partnership is whether the business has been carried on in behalf of the person sought to be charged as a partner, *i. e.*, did he stand in the relation of the principal toward the ostensible traders by whom the liabilities have been incurred and under whose management the profits have been made?" See our latest case, *Roach* v. *Rector*, 93 Ark. 521, where former decisions are cited and approved.

Now, there is nothing in this contract to show that the Armstrongs and Mrs. Bogard agreed to "carry on a business together, and to share in the profits thereof as joint owners of the business." The contract shows to the contrary. There is nothing in the contract to show that the business was carried on or was to be carried on in behalf of the Armstrongs. They do not by the terms of the contract stand in the relation of a principal to Mrs. Bogard. She was not in any sense their agent in conducting the hotel business. The contract shows to the contrary.

In *Buford* v. *Lewis*, 87 Ark. 412, we said: "A participation in profits is not conclusive, but it is a cogent test for trying the question, and is conclusive, unless there are some circumstances altering the nature of the contract." Here the circumstances under which the hotel business was to be conducted, so far as the rights of appellees are affected, are expressed in the contract, and on demurrer these must be taken as the test of the relation. The terms of the contract do not show a hotel business to be operated as a joint enterprise for the common benefit of the parties to it. The Armstrongs, as we view the contract, had nothing whatever to do with the management or operation of the business. Mrs. Bogard was the sole proprietor of the business. Appellees had no voice in the methods or manner of carrying on the business. As we have stated, the parties did not sustain the relation of principal and agent in any sense of the word.

Under the rule announced in *Meehan* v. *Valentine*, 145 U.
S. 611, for ascertaining the partnership relation as to creditors,
and quoted and approved by this court in *Buford* v. *Lewis*, 87
Ark. 412, *supra,* and in *Rector* v. *Robins,* 74 Ark. 437, the busi-
ness must be "carried on" as a "joint business." That essential
feature is conspicuously absent from the contract under con-
sideration.    See other authorities cited in appellee's brief.

The decree is affirmed.