NATIONAL STOCK YARDS NATIONAL BANK *v.* WILLIAMSON.

Opinion delivered May 21, 1928.

*J. T. Coston,* for appellant.
*H. C. Williamson,* for appellee.

MEHAFFY, J.   The appellee, H. C. Williamson, owned some land in Mississippi County, which he had rented to a negro by the name of Jones.   In order to enable Jones to farm the land, Williamson waived his landlord's lien in favor of the Bank of Commerce of Earle, Arkansas, to the extent of $660, and Jones gave his note to the bank for this amount, secured by a mortgage on his crop and also certain personal property, consisting of mules, wagons, implements, etc.   The note was dated April 5, 1924, and was due and payable to the Bank of Commerce, Earle, Arkansas, November 1, 1924.   The Bank of Commerce transferred this note to the appellant as collateral security for money borrowed from appellant, and appellant held this note at the time the Bank of Commerce failed, which was a few days after it received the check for Jones' cotton.

The cotton upon which the bank had a mortgage was sold in Memphis by the Hanley Cotton Company.   A check was made payable to the Bank of Commerce, and was handed to Williamson to take to the Bank of Commerce.   Williamson had suggested to the negro, Jones, to let Hanley Cotton Company sell his cotton.   The negro told him that he had spoken to the bank about it, and the bank told him it was up to him.   Williamson said that was true, but he thought that the Hanley Cotton Company would get about as much for his cotton as anybody else, and would sell it a little quicker.   Hanley was unable to finance himself in the cotton business, in which he was engaged, and he applied to Williamson to assist him, and Williamson indorsed for him at the bank and agreed to assist him in securing money to operate his business for 25 per cent. of the profits.

The chancellor entered a decree against Jones for the amount of Jones' indebtedness to the bank, with interest, and found in favor of Williamson.

It is earnestly insisted that Williamson and Hanley were partners.   It is true that Williamson was to receive 25 per cent. of the profits, and receiving a per cent. of the

profits is always evidence proper to be submitted on the question of whether a partnership exists.

This court has many times decided that a share of the profits alone does not constitute one a partner. And the undisputed proof in this case shows that, while Williamson was to receive 25 per cent. of the profits, he was not to share in the expenses or losses, and had nothing whatever to do with the conducting of the business. If Hanley had lost money, and if his expenses had exceeded his income from the business, Williamson would not have been liable for any portion of the losses. He might have had to pay the bank the notes that he indorsed there, but he would not have had to pay any of the expenses or losses of the partnership. *Rector* v. *Robins,* 74 Ark. 437, 86 S. W. 667; *Buford* v. *Lewis,* 87 Ark. 412, 112 S. W. 963; *LaCotts* v. *Pike,* 91 Ark. 26, 120 S. W. 144, 134 A. S. R. 48; *Drilly* v. *Armstrong,* 94 Ark. 505, 127 S. W. 725.

There are numerous other authorities, but it is unnecessary to call attention to them. This court has repeatedly held that a share of the profits alone does not constitute a partnership.

It is true that Williamson was interested in getting his rent out of the cotton, but the Bank of Commerce had to be paid before he was entitled to his rent, because he had waived his lien in favor of the Bank of Commerce for the express purpose of enabling Jones, the tenant, to get money from the bank, but he was not interested with Hanley as a partner and was not interested in the cotton any further than any landlord would be interested in collecting his rent.

As we view the case, it is wholly immaterial whether Jones and Williamson had a right to pay the note to the Bank of Commerce or not, under the circumstances. Hanley sold the cotton. Williamson was in no way interested in making the sale or handling the cotton, either as an agent or as a partner. In fact, the bank had told the negro that he, the negro, had the right to sell the cotton, and he did ship it to Memphis through the Bank of Com-

merce for the purpose of selling it, and Williamson asked him to get Hanley to sell it, which he did. When the sale had been made the check was made, not to Williamson, but to the Bank of Commerce, who had shipped the cotton for the negro. And Williamson merely carried the check and sales accounts in an envelope to the Bank of Commerce. Williamson did not know, at least there is no evidence that he knew, that the plaintiff held the note and mortgage, and, whether he had known it or not, the check was payable to the Bank of Commerce, not to Williamson, and he merely acted as any other agent would in carrying the check from Hanley to the Bank of Commerce. Any person might have done this, and this would create no liability. As a matter of fact, he had delivered the check to the Bank of Commerce and then told the cashier of the Bank of Commerce that, when they had applied a sufficient amount of the check to Jones' debt to pay it, to give him, Williamson, credit on his rent for the balance, whatever that was.

Appellant argues that it was the duty of Jones and Williamson, before delivering the cotton or its proceeds to the Bank of Commerce, to demand the surrender of the note, and that they had no right to deliver the cotton or its proceeds to the Bank of Commerce without the surrender of the note. In the first place, Williamson had nothing to do with delivering the cotton to the Bank of Commerce. Jones did this, and Williamson could not have prevented it if he had wished to do so. He had waived all the right he had in favor of the Bank of Commerce. He had absolutely no interest in the cotton until Jones' debt was paid, because he had waived any interest in favor of the bank.

The learned counsel for appellant has called attention to many authorities, and the propositions of law are therein correctly stated, but we have reached the conclusion that they have no application to the facts in this case.

It is contended that the burden of proof was on Williamson to prove that the Bank of Commerce had actual

authority to collect the Jones note, or had possession of the note. Williamson did not pay or undertake to pay the note of the Bank of Commerce. What he did was to deliver a check given to him in Memphis, in which he had no interest and no right to collect and no right to appropriate to his use or to withhold same from the payee of said check. He delivered it as it was his duty to do, and then requested the bank to credit to his rent account whatever was left after the payment of the note. He was then informed that the note was not in possession of the bank, but that the bank would write and get it. We know of no way that Williamson could have repossessed himself of the check if he had desired to do so, and, if he had retained possession, he would have done so without right, and could have been compelled to deliver it up to the Bank of Commerce.

It is insisted that Williamson destroyed plaintiff's lien. He simply took the warehouse receipts to Memphis after the cotton had already been shipped there by the bank, and told Hanley about the cotton. Hanley sold it then, Williamson having nothing whatever to do with it, and after Hanley sold it he gave the check to Williamson to take back to the Bank of Commerce.

It is insisted that Williamson is liable because he gave advice resulting in the destruction of the lien. We think counsel for appellant are mistaken in this claim. Jones was told by the bank, the holder of the note and mortgage, that he, Jones, had a right to sell it. He shipped it to Memphis without any advice from Williamson. He shipped it there for the purpose of selling it, and intended to sell it, and would have sold it if he had never seen Williamson. The only thing Williamson did in connection with the sale was that he suggested that Jones have Hanley sell it for him, which the negro did. Whatever advice he gave in this connection had nothing to do with destroying the lien of the appellant. Certainly, when he came back to the bank with the check and delivered it to the bank, he was not advising or assisting

in destroying the lien. He did not, according to the proof in this case, aid either the negro or the Bank of Commerce to destroy plaintiff's lien. The negro did not know that the appellant held his note, and Williamson did not know it. The appellant had never notified either. Moreover, there is evidence that the Bank of Commerce was in the habit of collecting notes of this kind for the appellant with its knowledge and consent; that it did collect and then remit the proceeds to appellant, and that no objection was ever made to this. This custom, however, was not known to Williamson or to the negro. Neither of them knew that the appellant had the note. The undisputed testimony shows that Williamson, after he gave the check to the Bank of Commerce, thought that the Bank of Commerce had the note. It would have been his duty to deliver the check to it whether he did or not, but he certainly did nothing to assist in destroying the lien.

The finding of facts by the chancellor is sustained by a preponderance of the evidence, and the decree is correct, and is therefore affirmed.